UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | |
| ) | Bankruptcy Case |
| KAREN MICHELE SZEWC and ) | No. 14-60928-tmr13 |
| JON EDWARDS UPDEGRAFF, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| DALE KREIN and ) | Adversary Proceeding |
| DEBRA KREIN, ) | No. 14-6086-tmr |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KAREN MICHELE SZEWC and ) | MEMORANDUM OPINION |
| JON EDWARDS UPDEGRAFF, ) | |
| ) | |
| Defendants. ) | |

Plaintiffs brought the present adversary proceeding to except a state court judgment from discharge under 11 U.S.C. § 1328(a)(4).[1] The proceeding was tried and post-trial briefing is complete. The matter is ripe for decision.

// // //

// // //

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-1

Procedural Background:

On February 3, 2012, Plaintiffs filed suit against Defendants in Jackson County Circuit Court (the State Court Action), seeking money damages and an injunction based on an alleged public nuisance caused by Defendants' Mastiff dogs. While the State Court Action was pending, Defendants filed a Chapter 13 petition on March 14, 2014. They are presently operating under a Chapter 13 plan dated April 1, 2014 (the Plan), which was confirmed on October 2, 2014.

Plaintiffs filed the instant adversary proceeding on June 25, 2014. They were subsequently granted relief from the automatic stay to prosecute the State Court Action, including pursuing injunctive relief and liquidating damages (Doc. #103). The Court later clarified the scope of its order to clearly permit any appeal or remand proceeding in the State Court Action (Doc. #158).

The State Court Action was tried in March and April 2016 on the Second Amended Complaint filed therein. The damages claim was tried to a jury. The claim for an injunction was tried to the court. The jury's verdict (the Verdict) was issued on April 2, 2016, and was incorporated into a General Judgment (the Judgment) entered on or about May 28, 2016. A money award was entered against Defendants for $238,942, with post-judgment interest at 9%, plus costs and attorney fees to be determined in supplemental proceedings.[2] Plaintiffs now seek to except the money award from Defendants' discharge.

Facts:

Defendants and Plaintiffs are neighbors residing on rural property in Jackson County, Oregon. For years, Defendants owned another nearby parcel. In 2013, they transferred that parcel to their daughter, where she presently resides. Plaintiffs' property borders both Defendants' and their daughter's properties.

Since 1999, Defendants have kept up to eleven (11) adult Mastiff dogs outside. Most of the dogs have been kept on their property, although at times several of the dogs have been placed on the property their daughter now owns. With the exception of short lulls, the dogs have continuously barked while Defendants

---

[2] The Judgment also contained an injunction requiring that Defendants remove the Mastiffs or debark them within 60 days, and that any new Mastiffs brought onto the property be debarked.

MEMORANDUM OPINION-2

are not at home, which during the workweek can be from 5:00 a.m. to 10:00 p.m. The dogs also bark while Defendants are home, although not as frequently.

In 2005, Defendant Karen Szewc was cited for violation of the Jackson County Code for failing to prevent two (2) dogs from becoming a public nuisance insofar as they "unreasonably caus[ed] annoyance, alarm or noise disturbance at any time of the day or night, by frequent or prolonged noises which may be heard beyond the boundary of the keeper's property." JCC 612.09(c)(2). In that matter, Mrs. Szewc argued a "right to farm" defense under ORS 30.930 et. seq. In particular, she argued, among other things, the dogs were necessary to protect a certain breed of sheep she raised. An evidentiary hearing was conducted before a hearings officer. On March 22, 2006, the hearings officer issued an order rejecting on multiple grounds the "farm use" defense, and finding and concluding that Mrs. Szewc was in violation of the Jackson County Code. The order gave Mrs. Szewc ten (10) days to take all reasonable and necessary steps to abate the nuisance, including but not limited to debarking or moving the dogs to a different property.[3] Despite the order, Defendants continued to keep many barking dogs on the properties.

Plaintiffs, with their residence located in close proximity to the property boundary of Defendant's and their daughter's properties, described the noise level at their home as akin to living next to a shooting range or blasting car horns. On a loudness scale of 1-10, Plaintiffs unequivocally rated it a 10. It affected all levels of their daily living. Plaintiffs felt like prisoners in their own home, venturing outside only for short intervals. Even then, Mrs. Krein's wariness was compounded by cameras Defendants posted around their own property's perimeters. When Mr. Krein went out, he was forced to listen to music through headphones to drown out the barking. Except for small events with family and close friends, Plaintiffs stopped hosting social gatherings.

// // //

// // //

// // //

---

[3]Later in 2006 the order was affirmed by the Jackson County Circuit Court, which in 2008 was affirmed by the Oregon Court of Appeals.

MEMORANDUM OPINION-3

The continuous barking caused both Plaintiffs severe emotional distress. Because of the barking, they suffered sleep loss, migraines, chest pains, high blood pressure, and stomach aches.[4]

Discussion:

Apportionment of Damages:

The jury found Plaintiffs were entitled to $238,942 in damages for approximately fourteen (14) years of injurious conduct. However, neither the jury nor the State Court judge apportioned the damages to any particular period, and the State Court record is otherwise inconclusive on this point. At issue in this proceeding is what portion of the damages are either excluded from Defendants' discharge as post-petition debt, or excepted from it under § 1328(a)(4). Both of these are federal bankruptcy questions where the burden of proof rests with Plaintiffs by a preponderance of the evidence. Hassanally v. Republic Bank (In re Hassanally), 208 B.R. 46, 49 n.4 (9th Cir. BAP 1997) (creditor has burden of proving exclusion from scope of discharge); Barnes v. Roberts (In re Roberts), 538 B.R. 1, 9 (Bankr. C.D. Cal. 2015) (creditor has burden of proving exception to discharge).

The parties agree the damages compensated Plaintiffs through April 2, 2016, the date the Verdict was issued. Exactly when the damages began, however, is ambiguous. The Verdict merely indicates Defendants' conduct began in "2002." Plaintiffs' State Court counsel testified that, although no statute of limitations applied,[5] Plaintiffs' recovery was nonetheless limited by a ten (10) year statute of ultimate repose, and thus they were only entitled to damages commencing February 3, 2002, exactly ten (10) years before they filed the State Court Action.[6] This testimony was uncontradicted, and the Court will adopt the February 3, 2002, "damage start date." The awarded damages therefore encompassed 5,173 days. During that entire

---

[4]The evidence indicates the barking has continued post-Judgment, and continues to affect Plaintiffs as described above.

[5]See Laurance v. Tucker, 160 Or. 474, 479, 85 P.2d 374, 376 (1938) (statutes of limitation do not apply to actions for public nuisance).

[6]The Court takes no position on whether actions for public nuisance are limited by a ten (10) year ultimate repose period.

MEMORANDUM OPINION-4

period, Plaintiffs' uncontroverted testimony indicated the barking was roughly equivalent both in duration and degree. A per annum apportionment is thus appropriate. Because portions of years need to be computed, a per diem calculation provides even more accuracy. The $238,942 in damages, spread over 5,173 days, equates to $46.19 per diem (rounded).

Portion of Damages Excluded from Discharge as Post-petition Debt:

Section 1328(a) provides for discharge of "all debts provided for by the plan." Defendants do not dispute that the Plan, with limited exceptions, only "provide[s] for" debts which arose before they filed their Chapter 13 petition on March 14, 2014. The question, therefore, becomes whether any of the apportioned damages arose post-petition. If so, they are excluded from the scope of any discharge Defendants will receive.

"The term 'debt' means liability on a claim." § 101(12). In turn, a "claim" is defined in § 101(5)(A) in broad terms as a "right to payment, whether or not such right is . . . contingent." Section 101(5)(A) does not, however, specifically dictate when a "claim" arises for bankruptcy purposes. That determination has been left to the courts and is a matter of federal law. Bechtold v. Gillespie (In re Gillespie), 516 B.R. 586, 591 (9th Cir. BAP 2014). In general, the courts in this Circuit use the "fair contemplation" test. Id. Under that test, a claim arises "when the claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under non-bankruptcy law." Id. (internal quotation omitted). The test originally grew out of environmental clean-up cases, see, e.g., Cal. Dep't of Health Servs. v. Jensen (In re Jensen), 995 F.2d 925, 930-931 (9th Cir. 1993), but has been expanded to other types of proscribed activity. Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1000-1001 (9th Cir. 2006) (claims of sex discrimination).

There are two parts to the "fair contemplation" test. First, there must be pre-petition conduct. Jensen, 995 F.2d at 930. Second, the claimant must have fairly contemplated that the conduct would give rise to the debtor's potential liability. Id. at 930-931. Thus, the second prong limits the first; it does not extend it to post-petition tortious conduct. Defendants' argument to the contrary is misplaced.

// // //

MEMORANDUM OPINION-5

As noted above, Defendants' conduct in allowing the dogs to bark and create a public nuisance continued in equal measure throughout the entire damages period. The post-petition barking independently supported a public nuisance claim. Perhaps one way to conceptualize this is to imagine the dogs started barking one second after Defendants filed their Chapter 13 petition. The evidence supports the conclusion that the post-petition barking alone would have constituted a public nuisance under Oregon law. See discussion infra pp. 10-11. Defendants argue, however, that their post-petition tortious conduct should be wrapped into a potentially dischargeable pre-petition claim simply because Plaintiffs were on fair notice the dogs would likely keep barking post-bankruptcy. Following this argument to its logical conclusion would allow the dogs to bark forever without financial consequence. The Bankruptcy Code is not that generous.

The damages attributable to Defendants' post-petition conduct amount to $34,643 (rounded).[7] This amount,[8] plus post-judgment interest thereon, is excluded from Defendants' discharge.

Portion of Damages Excepted from Discharge:

Sections 1328(a)(1)-(4) list the types of debts that, although coming within the scope of a general discharge, nevertheless are excepted from it. The applicable subsection here is § 1328(a)(4), which as discussed in more detail below excepts from discharge certain civil damages awards based on tortious conduct. The Court must determine which portion, if any, of the damages attributable to the pre-petition period falls within that subsection. See Waller v. Heckman (In re Heckman), 2011 WL 5148975, *2-5 (Bankr. D. Or. Oct. 28, 2011) (where state court default judgment was for overall repair costs, the bankruptcy court examined each particular category of damage for dischargeability purposes). Two timeframes are relevant: 1) February 3, 2002 through March 22, 2006; and 2) March 23, 2006 through March 14, 2014.

---

[7]$46.19/diem times 750 days (March 15, 2014-April 2, 2016).

[8]There is one other issue regarding post-petition debt. The Plan requires full payment of allowed administrative expenses under §§ 507(a)(2) and 503(b). There is authority that post-petition tortious conduct by a trustee or Chapter 11 debtor-in-possession gives rise to an administrative expense claim. Zilog, 450 F.3d at 999 n.1. Because neither side has raised the issue, the Court leaves for another day whether that doctrine should be extended to conduct by Chapter 13 debtors.

MEMORANDUM OPINION-6

Damages Through March 22, 2006:

For the period February 3, 2002, through March 22, 2006, the Verdict provided that "defendants maintained a public nuisance on their property through their negligent conduct." Whether or not this finding precluded Plaintiffs from attempting to prove the elements of § 1328(a)(4) in this proceeding was mooted by their concession in pre-trial proceedings that the damages attributable to this period, which equate to $69,701 (rounded),[9] are dischargeable.

Damages From March 23, 2006, through March 14, 2014:

The parties vigorously dispute the dischargeability of the damages attributable to the period from March 23, 2006, through March 14, 2014, the date Defendants filed their Chapter 13 petition. These damages total $134,598 (rounded).[10]

Section § 1328(a)(4) excepts from discharge "any debt–for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual."

Debt/Damages/Injury:

The Judgment "satisfies the requirement of a debt for damages awarded in a civil action." B.B. v. Grossman (In re Grossman), 538 B.R. 34, 39 (Bankr. E.D. Cal. 2015).[11] See also Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 872 (9th Cir. 2005) (state court judgment preclusive as to amount of "debt" for § 523 purposes). Nevertheless, only those "damages . . . awarded . . . as a result of willful or malicious injury by the debtor that caused personal injury" are excepted from discharge (emphasis added). The meaning of the emphasized language is deceptively complex. Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1168 (9th Cir. 2006) (statutory construction begins with the statute's text). Did Congress intend two

---

[9]$46.19/diem times 1509 days.

[10]$46.19/diem times 2914 days.

[11]For § 1328(a)(4) purposes, the damages award may be entered either pre or post-petition. Waag v. Permann (In re Waag), 418 B.R. 373, 382 (9th Cir. BAP 2009).

MEMORANDUM OPINION-7

types of "injury," the first somehow "caus[ing]" the second? At least one court has recognized this grammatical oddity. See Woods v. Roberts (In re Roberts), 431 B.R. 914, 922 n.4 (Bankr. S.D. Ind. 2010) ("willful or malicious injury appears to be distinct from the personal injury for which damages were awarded").

Section 1328(a)(4) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Its scant legislative history provides in pertinent part:

> Section 314(b) amends section 1328(a) . . . to make the following additional debts nondischargeable in a chapter 13 case: . . . debts for restitution or damages, awarded in a civil action against the debtor as a result of willful or malicious <u>conduct</u> by the debtor <u>that caused personal injury</u> to an individual . . . .

HR Rep. No. 31, 109th Cong., 1st Sess 314 (2005) (emphasis added).

Based on this history, it could well be argued the first "injury" referenced in the statute equates to "conduct" and the second equates to that conduct's consequences. However, Congress did not use different terms; it used "injury" twice. When "[a] term appear[s] in several places in a statutory text[, it] is generally read the same way each time." Ratzlaf v. United States, 510 U.S. 135, 143, 114 S. Ct. 655, 660 (1994). This general rule is all the more forceful when the term appears in the same sentence. Moreover, when it legislates, Congress is presumed to be aware of past judicial interpretations. Fed. Trade Comm'n v. AT & T Mobility LLC, 835 F.3d 993, 999 (9th Cir. 2016). Seven years before BAPCPA's enactment, the Supreme Court took up the meaning of "willful and malicious injury" as used in § 523(a)(6).[12] In doing so, the Court held that "willful" injury means a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998) (emphasis in original). Thus, the Court made a clear distinction between conduct and its consequences, and courts hence have not been hesitant to import Geiger and its progeny when construing § 1328(a)(4). See, e.g., Grossman, 538 B.R. at 39; Toste v. Smedberg (In re Toste), 2014 WL 3908139, *4 n.6 (9th Cir. BAP Aug. 12, 2014).

---

[12]Section 523(a)(6) excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" from discharge in Chapters 7, 11, and 12 of the Bankruptcy Code, and in Chapter 13 in cases of "hardship discharge."

MEMORANDUM OPINION-8

Therefore, despite its awkward language, § 1328(a)(4) encompasses only one "injury" and can be paraphrased as applying to "civil awards based on willful or malicious personal injury." Id. at *2.

Personal Injury:

The statute requires "personal injury." The Bankruptcy Code does not define the term and there is no controlling caselaw. While it is well-settled that "personal injury" excludes injury to property, Waag, 418 B.R. at 377, the term's reach has otherwise been open to interpretation.

Several Bankruptcy Courts have thoughtfully addressed the issue. See, e.g., Adams v. Adams (In re Adams), 478 B.R. 476, 485-492 (Bankr. N.D. Ga. 2012); Sales v. Bailey (In re Bailey), 555 B.R. 557, 561-564 (Bankr. N.D. Miss. 2016); Grossman, 538 B.R. at 34. Adams contains the most exhaustive analysis. There, the court held the term "personal injury" includes nonphysical (or nonbodily) injuries, but does not include injuries to business interests. In its analysis, the court examined the prima facie elements of the underlying tort claims. Each one which provided a remedy for violation of a personal right (e.g., to be free from intentional infliction of emotional distress or from harm to one's personal reputation) was found to be a "personal" injury. Id. at 488-492. In distinction, torts which addressed invasions of business interests, including business reputation, were found not to be "personal injuries." Id. Grossman addressed the same issue and found the torts of intentional infliction of emotional distress and invasion of privacy were "personal injuries." 538 B.R. at 42-43. In doing so, the court quoted the Restatement (Second) of Torts § 7, which provides that "'[i]njury' denotes the invasion of any legally protected interest of another." Id. at 41. These holdings support the view that "personal injury" depends on whether the claim upon which the damages were awarded primarily protects a "personal" as opposed to "property, financial or business" right.

The statute's parallel language also supports this interpretation. Clark, 460 F.3d at 1175 (court should not view statutory language in isolation and should pursue consistency both within a particular provision and the statutory scheme as a whole). The alternate ground for establishing an exception to discharge under § 1328(a)(4) is "willful or malicious injury that caused . . . the death of an individual." "Death" is the ultimate invasion of an individual's right to be free from harm, and of a survivor's right to the decedent's society and companionship.

MEMORANDUM OPINION-9

Finally, in construing "personal injury" in § 1328(a)(4), courts have been guided by judicial interpretations of similar language in 28 U.S.C. §§ 157(b)(2)(O) and (5). Adams, 478 B.R. at 486; Grossman, 538 B.R. at 42. Those subsections limit a bankruptcy court's authority to adjudicate "personal injury tort" claims. Courts interpreting that term have likewise focused on the type of legal interest primarily infringed. See, e.g., Adelson v. Smith (In re Smith), 389 B.R. 902, 908 (Bankr. D. Nev. 2008) ("personal injury tort" includes an invasion of one's reputation, such as libel, but does not include invasions of business or financial interests); Holt v. Green, 2016 WL 927148, *3 (D. Nev. March 10, 2016) (the scope of "personal injury tort" does not include claims which have financial, business, property, and contract characteristics).

In light of the above authority, this Court will examine the evidence to determine whether Defendants primarily injured a personal interest of Plaintiffs. State law guides that inquiry. The only tort theory Plaintiffs argued was Oregon's law of public nuisance. A brief review of that law is therefore appropriate.

Under Oregon law, claims for "nuisance" are divided into two categories "public" and "private." The name "nuisance" is misleading because it refers to the result of the tortious behavior rather than the behavior itself. In fact, the torts are based on substantial and unreasonable interference or invasion of protected interests. Jewett v. Deerhorn Enters., Inc., 281 Or. 469, 473, 575 P.2d 164, 166 (1978). A nuisance claim can be based on intentional, reckless, or negligent acts, or the operation of an abnormally dangerous activity. Frady v. Portland Gen. Elec. Co., 55 Or. App. 344, 348, 637 P.2d 1345, 1348 (1981). An invasion of another's interest so as to create a nuisance is "intentional" when it is done: 1) for the purpose of causing the invasion; or 2) with knowledge that the invasion will result or is substantially certain to result from the conduct.[13] Phillips Ranch, Inc. v. Banta, 273 Or. 784, 792 n.5, 543 P.2d 1035, 1039 (1975). For a private nuisance, the invasion or interference is to the use or enjoyment of land, Jacobson., 273 Or. at 18, 539 P.2d at 643, including the occupant's comfort or convenience. Macca v. Gen. Tel. Co., 262 Or. 414, 419, 495 P.2d

---

[13]As explained further, "['i]ntentional' as used in this [second] context, means that the act was done with the knowledge that it would result in damage to another, not that it was done for the purpose of perpetrating injury." Jacobson v. Crown Zellerbach Corp., 273 Or. 15, 19, 539 P.2d 641, 643 (1975).

MEMORANDUM OPINION-10

1193, 1195 (1972). For a public nuisance, the invasion or interference is to a right common to the general public. Raymond v. S. Pac. Co., 259 Or. 629, 634, 488 P.2d 460, 462 (1971).

"Public nuisances" are often defined by statute, ordinance, or code. However, as here, they may also be based on the common law. Normally, public nuisances are vindicated by the appropriate government agency. Frady, 55 Or. App. at 348, 637 P.2d at 1348-1349. However, a private citizen may commence a private action for damages if he has suffered a "special injury." Id. The "special injury" "must be different in kind, not merely degree" from that suffered by the general public. Id. at 349, 637 P.2d at 1349. A public nuisance that interferes with the use or enjoyment of land is one type of "special injury." Id.

<u>The State Court Record is Not Preclusive as to "Personal Injury"</u>:

Both sides argue the record in the State Court Action is dispositive on the issue of whether or not there was "personal injury." Issue preclusion–sometimes referred to as collateral estoppel–is a viable tool in dischargeability litigation. Grogan v. Garner, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 (1991). In that context, "'[i]f in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [§ 1328(a)], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.'" Sasson, 424 F.3d at 872 (quoting Brown v. Felsen, 442 U.S. 127, 139 n.10, 99 S. Ct. 2205, 2213 (1979)).

In determining the preclusive effect of a state court judgment in a subsequent federal suit (including dischargeability proceedings), the court looks to the issue-preclusion law of the state that rendered the judgment. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). In Oregon, "[i]ssue preclusion . . . preclude[s] relitigation of an issue [of law] or fact when that issue or fact has been determined by a valid and final determination in a prior proceeding." McCall v. Dynic USA Corp., 138 Or. App. 1, 5, 906 P.2d 295, 297 (1995) (internal quotation omitted). The requirements are:

> 1) The issue in the two proceedings is identical.
> 2) The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
> 3) The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
> 4) The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

MEMORANDUM OPINION-11

> 5) The prior proceeding was the type of proceeding to which th[e] court will give preclusive effect.

Id. at 5, 906 P.2d at 297-298 (quoting Nelson v. Emerald People's Util. Dist., 318 Or. 99, 104, 862 P.2d 1293, 1296-1297 (1993)). "The party asserting issue preclusion bears the burden of proof on the first, second, and fourth requirements, whereupon the burden shifts to the party against whom preclusion is asserted to show that the third and fifth requirements are not met." Thomas v. U.S. Bank Nat'l Assoc., 244 Or. App. 457, 469, 260 P.3d 711, 719 (2011).

Prongs ##3-5 are not at issue. Prongs ##1 and 2 require that an identical issue be actually litigated. "An issue is 'actually litigated' when the factual and legal issues that the plaintiff raises in the second case were *actually* adjudicated and essential to the determination of the first case." Id. at 472, 260 P.3d at 720 (internal quotation omitted) (emphasis in original).

Here, whether or not Defendants interfered with a primarily personal interest of Plaintiffs was not actually litigated in the State Court Action. The record therein makes clear the only "special injury" pled and presented to the jury primarily involved interference with Plaintiffs' use and enjoyment of their property. See Exhibits 3 (Second Amended Complaint) and 20 (Jury Instructions).[14] As such, the State Court record is not preclusive in either Plaintiffs' or Defendants' favor.

On a related note, it is important to bear in mind that a "debt," here the $248,942 in damages, and its dischargeability are distinct concepts, and as such, the doctrine of "claim preclusion" does not apply. Indeed, as the Court repeatedly reminded the parties in this case, it is not unusual for a "debt" to be based on a theory different from the one argued to except it from discharge. In Brown v. Felsen, 442 U.S. 127, 99 S. Ct. 2205 (1979), the Supreme Court discussed why there is little incentive for a creditor to fold a fraud claim

---

[14] The State Court record indicates the trial court judge excluded an instruction allowing the jury to consider Plaintiffs' mental suffering, emotional distress, and humiliation in determining the amount of noneconomic damages, in favor of a general instruction to consider "[a]ny substantial and unreasonable inconvenience and interference with the plaintiff's [sic] use and enjoyment of their property" in determining such damages. Contrary to Defendants' arguments, the change in jury instructions does not limit Plaintiffs' ability to argue personal injury.

MEMORANDUM OPINION-12

into a run-of-the-mill pre-bankruptcy collection suit. 442 U.S. at 134-138, 99 S. Ct. at 2211-2212. The same holds true for tort claims, as there may be many reasons to sue on one theory but not another. One example is Nassbridges v. Dimichele (In re Nassbridges), 464 B.R. 494, 2011 WL 3244396 (9th Cir. BAP July 15, 2011) (unpublished), where the creditor claimants stipulated in district court litigation that the damages caused by the debtor were the result of his negligent acts or omissions. Their amended complaint thus removed allegations of fraud and pled only claims based on negligence and breach of fiduciary duty. The claimants then obtained summary judgment based on those claims. In subsequent dischargeability litigation, the debtor attempted to preclude any § 523(a)(2) fraud claims based on claimants' prior stipulation in the district court litigation. The court rejected the argument stating:

> [T]here is nothing necessarily inconsistent about asserting negligence in prebankruptcy litigation and fraud in a bankruptcy nondischargeability action. As we explain further below, bankruptcy nondischargeable fraud is a different legal question than state law fraud *(Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S. Ct. 2205, 60 L. Ed.2d 767 (1979)), even though a determination of fraud by a non-bankruptcy court may become issue preclusive in bankruptcy nondischargeability litigation.

Id. at *9. Thus, even assuming arguendo the Verdict was based on a subspecies of property damage, Plaintiffs' present claims as to the dischargeability of those damages on a different theory are not barred.

<u>Plaintiffs Met Their Burden to Prove "Personal Injury":</u>

Because preclusion principles do not carry the day, this Court must independently examine whether sufficient evidence was adduced to show Defendants primarily interfered with a personal right recognized by Oregon's law of public nuisance. As noted, the injury Plaintiffs suffered must be different in kind, rather than degree, to that suffered by members of the public in general, and the interference must be substantial, unreasonable, and, because an ultra-hazardous activity was not involved, supported by some degree of culpable conduct.

The court in Wilson v. City of Portland, 153 Or. 679, 58 P.2d 257 (1936) discussed the required injury. There, the plaintiffs brought multiple actions for public nuisance based on defendant's dumping of garbage in a ravine next to their residence. There, the court considered whether the plaintiffs had split their cause of action arising under a single tort, so that certain of the actions would be barred. The issue centered

MEMORANDUM OPINION-13

on whether the plaintiffs had alleged injury to their personal as well as property interests. The court held that allegations that odors and fumes from the garbage prevented plaintiffs' normal sleep and rendered the air "foul and unfit to breathe" "disclose[d] a wrongful invasion of the personal rights of the plaintiffs" even absent allegations the odors caused sickness or any objective physical injury. Id. at 684, 58 P.2d at 259. Here, the barking went one step further than the odors in Wilson, interfering not only with Plaintiffs' peace of mind, but with their peace of body as well, causing multiple physical manifestations in the form of migraines, high blood pressure, stomach aches, and chest pains, all accentuating the point that an individualized "special" injury occurred.[15]

Further, the interference was substantial. Jewett, 281 Or. at 473, 575 P.2d at 166. The barking caused Plaintiffs to become prisoners in their own homes, rendering them mentally and physically debilitated. Moreover, the barking's utility, when compared to its harm, was unreasonable. Hay v. Stevens, 271 Or. 16, 20-21, 530 P.2d 37, 39-40 (1975).[16] Finally, the Court finds, supported by the Verdict as addressed in this Court's summary judgment ruling,[17] that Defendants acted intentionally in that, at minimum, they knew that injury to Plaintiffs' mental and physical well-being would result or was substantially certain to result from their conduct. Banta, 273 Or. at 792 n.5, 543 P.2d at 1039.

Plaintiffs have thus proven, by a preponderance of evidence, tortious injury to a personal interest under Oregon law, and thus "personal injury" for purposes of § 1328(a)(4).

---

[15]These physical manifestations distinguish this case and Wilson from cases such as Frady, 55 Or. App. at 348-349, 637 P.2d at 1349.

[16]Defendants did not testify at trial and adduced no other evidence as to why allowing the barking was useful. They, and other witnesses on their behalf, did testify in the State Court Action, the transcript of which has been admitted. Exhibit 15, pp. 28-539. However, this Court made clear it would not independently review the entire transcript; rather, the parties were to direct the Court to the pertinent portions thereof. Defendants have not directed the Court to any portion of the transcript relevant to the barking's usefulness.

[17]The Verdict contained findings that Defendants maintained a public nuisance on their property through intentional conduct after March 22, 2006, and that this intentional conduct was a cause of damages to Plaintiffs.

MEMORANDUM OPINION-14

Willful or Malicious Injury:

Section 1328(a)(4) also requires a "willful or malicious" injury. Courts have assumed Congress intended to give the terms "willful" and "malicious" as used in § 1328(a)(4), the same meaning they have in § 523(a)(6). See, e.g., Toste, 2014 WL 3908139, at *4 n.6. To be "willful," a debtor must have a subjective motive to inflict injury or believe that injury is substantially certain to result from his own conduct. Ormsby v. First Am. Title Co. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). For an injury to be "malicious," there must be: (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Id. at 1207. "[I]t is the wrongful act that must be committed intentionally rather than the injury itself." Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1106 (9th Cir. 2005).

The evidence adduced easily satisfies either the willful or malicious requirement. The sheer volume and duration of barking is itself relevant evidence as to Defendants' state of mind. Moreover, after the hearing officer's order on March 22, 2006, Defendants were on clear notice that allowing the dogs to bark created a public nuisance, yet their activity continued unabated.[18] This is compelling circumstantial evidence that they knew with substantial certainty that personal injury to Plaintiffs, their neighbors, would result.

Based on the nature of their wrongful act, Defendant's willful injury allows a presumption that it was also malicious. Ormsby, 591 F.3d at 1207. Even without the presumption, allowing the dogs to bark was

---

[18]The evidence at trial indicated the barking continued unabated even after the State Court entered its injunction, up to and including the time this matter was tried. This Court had a brief colloquy with counsel on the subject. Counsel for Defendants represented that, although he had no personal knowledge regarding it, he believed the injunction had been stayed pending the Judgment's appeal.

Defendants have an obligation to proceed in good faith during the entirety of their Chapter 13 case. See, e.g., In re Cluff, 2012 WL 1552391, *5 (Bankr. D. Idaho April 30, 2012) (lack of good faith post-confirmation may constitute "cause" for dismissal under § 1307(c)); In re Bennett, 200 B.R. 252, 254 (Bankr. M.D. Fla. 1996) (same). Post-confirmation tortious conduct, especially in violation of an injunction, would likely not be in good faith. An order will be entered requiring that by March 20, 2017, Defendants file and serve on Plaintiffs' counsel and the Chapter 13 Trustee, a declaration indicating whether the State Court's injunction as incorporated in the Judgment is, or has been, stayed and, if stayed, attaching a copy of the order or judgment imposing the stay. This Court then reserves the right to take whatever action it deems appropriate, including setting a hearing on an order to show cause why the main Chapter 13 case should not be dismissed.

MEMORANDUM OPINION-15

wrongful, intentional, and necessarily harmed Plaintiffs, and Defendants have adduced no evidence of a just cause or excuse.[19]

Causation:

A preponderance of the evidence indicates that all of the damages awarded for the period March 23, 2006, through March 14, 2014, were, as required by § 1328(a)(4), "as a result of" the willful and malicious personal injury inflicted on Plaintiffs.

Conclusion:

Of the total $238,942 in damages awarded, $34,643 plus post-judgment interest thereon is excluded from Defendants' discharge as post-petition debt. In contrast, $69,701 is dischargeable under § 1328(a) should Defendants complete the Plan and receive their discharge. The remaining $134,598 plus post-judgment interest thereon is nondischargeable under § 1328(a)(4) as willful or malicious personal injury. Judgment will be entered consistent with this Opinion.

The Court's findings of fact and conclusions of law under FRBP 7052 are set forth above. They shall not be separately stated.

THOMAS M. RENN
Bankruptcy Judge

---

[19] Again, Defendants did not testify at trial, and have not directed the Court to any portion of the State Court transcript supporting a just cause or excuse for allowing the dogs to bark. See supra n.16

MEMORANDUM OPINION-16